## Case No. 9,877.

### In re MOSS.

[19 N. B. R. 132.] [1]

District Court. S. D. New York. April 23, 1879.

BANKRUPTCY — STOCK BROKER — MERCHANT OR TRADESMAN—FAILURE TO KEEP BOOKS —DISCHARGE.

The bankrupt was a stock and gold broker, but was not a member of the Stock Exchange. He took orders for the purchase and sale of stocks and gold, but conducted the business exclusively through the agency of other brokers, who were members of the exchange, and divided the commissions with them. *Held*, that he was not a merchant or tradesman, within the meaning of the act, and as such disentitled to a discharge for failure to keep books of account.

In bankruptcy.

B. Skaats, for bankrupt.

Chas. E. Crowell, for creditor.

CHOATE, District Judge. This is an application for the discharge of the bankrupt. The only specification is that, being a "merchant or tradesman," he kept no books of account. The bankrupt kept no books. The only question is, was he a "tradesman," within the meaning of the act [of 1867 (14 Stat. 517)]? The evidence as to the nature of the bankrupt's business is very confused; but, as nearly as it can be made out from his examination, it was as follows: He was a stock and gold broker, but without being a member of the Stock Exchange. He took orders for the purchase and sale of stock and gold, but did not himself execute the orders. He opened accounts in his own name, as "agent," with other brokers, who were members of the exchange, and they bought and sold for him upon his orders, and gave him half the commission usual in such transactions. He furnished those for whom he did the business a memorandum of each transaction immediately after it occurred. It did not appear whether his customers knew that he bought and sold exclusively through other brokers, nor was there any evidence of concealment. The debts contracted by him consisted chiefly of balances due the brokers through whom he acted, being in reality for excess of his losses over the margins deposited. There were also some debts for borrowed money, and some debts due to the customers who employed him, for balances on these stock transactions. Upon these facts, I think it clear that the bankrupt was not a "merchant or tradesman," within the meaning of the act, and as such disentitled to a discharge for failure to keep books of account. The careful discussion of the meaning of the word "tradesman" in recent cases makes it unnecessary to do more than refer to those authorities. In re Coté [Case No. 3,267]; In re Stickney [Id. 13,439]; In re Marston [Id. 9,142]. Discharge granted.

[1] [Reprinted by permission.]

MOSS, The (MAGEE v.). See Case No. 8,944.

MOSS (RIDDLE v.). See Case No. 11,809.

MOTHERSHED (HEALY v.). See Case No. 6,296.

## Case No. 9,878.

### In re MOTT et al.

[N. Y. Times, Dec. 8, 1863.]

Circuit Court, S. D. New York. Nov. 28, 1863.

BANKRUPTCY—JURISDICTION OF DISTRICT COURT— SETTING ASIDE CONVEYANCE BY ASSIGNEE.

[Cited in Re Hyde, 6 Fed. 594, to the point that the district court in bankruptcy has the power to set aside by summary process a conveyance executed by the assignee in bankruptcy which was improvidently, irregularly, or without due authority, executed by the assignee, or which was procured to be executed by fraud upon the court or upon the assignee, while the property so conveyed is still in the hands of the party to whom so conveyed by the assignee.]

[This case is first reported as heard upon objections to petition of Jacob H. Mott to be decreed a bankrupt. Case No. 9,878b. It is next reported as heard in the district court upon application to set aside the sale by the assignee to Isaac C. Delaplaine of the bankrupts' interest in the estate of their grandfather John Hopper. The petitioners were allowed to move it into this court. Case No. 9,878a. It is now heard upon this removal.]

Judge Foote, for motion.

Mr. Betts, opposed.

NELSON, Circuit Justice. We have looked into the papers in this case, and are satisfied that the two orders entered by the district court, on the report of the general assignee, for a private sale of the assets of the bankrupts, on the 28th of February, 1860, were improvidently granted, and that they should be set aside, and, also, that the conveyance under them by the assignee to Isaac C. Delaplaine should be delivered up and canceled, and the monies paid by him, and deposited in the district court, be refunded to him, and those received by the assignee, and not so deposited, be refunded by the said assignee. We do not doubt but that the district court has full power and jurisdiction to make an order to the above effect. As to the prayer of the petitioners that conveyances of the property made by the assignee to Delaplaine be made to them, we are of opinion that the district court has no power to make such an order, or that it would be right or proper to make it, even if it had the power. In the existing condition of the matter in controversy, a proper and equitable disposition of them, in our judgment, would be an order directing a sale of these assets at public auction, giving ample notice of the time and place of sale, with a particular description of the nature, locality and boundaries of the property, it being real estate; or, at least, as full and particular a description as practicable. As to the question of the two years'

limitation in the bankrupt statute, it has heretofore been adjourned to this court by the district court, and by this court held not to apply. Let the above be certified by the clerk to the district court.

[NOTE. Subsequently the administrators of Isaac C. Delaplaine petitioned to have the amount paid by him refunded to them. Case No. 9,879. At the public sale of this interest it was purchased by James M. Smith, Jr. A petition was filed to set aside this last sale. Petition dismissed. 6 Fed. 685.]

## Case No. 9,878a.

### In re MOTT et al.[1]

[N. Y. Times. April 27, 1861.]

District Court, S. D. New York. 1861.

BANKRUPTCY—MOTION DENIED—AGAIN MADE ON SAME FACTS—DILIGENCE OF ASSIGNEE— FRAUD OF CREDITOR.

[1. A motion in a bankruptcy proceeding which has been denied without prejudice to any other motion, suit, action, or proceeding in respect thereto cannot be repeated on the same facts, nor upon additional papers which do not touch the merits of the controversy.]

[2. An assignee in bankruptcy is not bound to institute a search in respect to any interest the bankrupt may have in the estate of any of his ancestors, if it is not maintained in the schedules, nor indicated to the assignee or any of the creditors.]

[3. A creditor, who discovers a bankrupt's interest in an estate, asserts that it is of no value, and induces the assignee to agree to transfer it to him for a nominal consideration, is not entitled to a decree for specific performance, the assignee having in the meantime learned that the interest was valuable.]

[Cited in Re Hyde, 6 Fed. 593.]

[This case was previously heard upon objections to petition of Jacob H. Mott to be decreed a bankrupt. Case No. 9,878b.]

This was an application to set aside a conveyance made by the general assignee in bankruptcy. Decrees of bankruptcy were rendered against both parties on January 27, 1843, and certificates of bankruptcy were granted to Jacob H. Mott on May 23, 1843, and to Jordan Mott on May 27, 1843. On February 28, 1860, the general assignee, to whom their estates had been assigned, filed a report in each case setting forth that application had been made to him to procure at private sale all the interest which the bankrupts had in the estate of their grandfather John Hopper, who died in August, 1819; that he had carefully examined the subject; and moved for an order authorizing him to sell that property. The order was entered, and the assignee sold the property at private sale to Isaac C. Delaplaine, for the sum of $800 for the property, and $200 to the assignee for his costs and expenses. Before the order authorizing the sale, Mr. Foot, as counsel of the Union Bank, of this city, applied to the assignee to sell the property to the bank for a nominal consideration and his costs; and he

[1] [See note at end of case.]

testifies that the assignee agreed to make such conveyance, and received $25 as his costs, and made the arrangement with Delaplaine in violation of that agreement. The bank thereupon filed a petition setting up these facts, and that they were creditors of both bankrupts, to a large amount, and prayed that the conveyance to Delaplaine should be rescinded, and that the assignee be compelled to fulfill his agreement with the bank. This motion on the petition and the opposing affidavits came on to be heard before Judge Hall on April 21, 1860, and he denied the motion, but "without prejudice to the rights of the parties, or to any other motion, suit, action, or proceeding in respect thereto." The motion is now reviewed on the same papers, together with a notice by the assignee of a dividend to be declared, published June 14, 1860, and a correspondence as to the terms on which Delaplaine would transfer his bargain.

HELD BY THE COURT: That the leave granted by Judge Hall gives no authority to repeat the motion on the same facts, and the additional papers do not touch the merits of the controversy, or tend to impeach the integrity or validity of the sale to Delaplaine or to strengthen the legal or equitable right set up by the petitioners in their original motion. That it is doubtful whether the petitioners are competent to prosecute any motion or proceedings in equity without having proved debts in their favor, under the bankrupt law [of 1841 (5 Stat. 440)], or whether they show any matter triable in this court under that law, which provides that no suit at law or in equity shall, in any case, be maintained by or against the assignee, unless the same shall be brought within two years after the declaration and decree of bankruptcy, or after the cause of action shall have first accrued. That the interests of the bankrupts under the Hopper will was not maintained in their schedules, nor indicated to the assignee by any of their creditors. No duty was imposed upon him by law to institute a search, or even an inquiry, in respect to an object so occult. When the matter was first brought to his notice by the counsel for the petitioners, it was asserted that it was of no value, and its transfer was asked, therefore, on a nominal consideration. Instead of enforcing a specific performance, the court would have held it a high dereliction of duty on the part of the assignee if he had so transferred it, having learned that it was of value to the United States. That the proceedings out of which the sale arose were conducted according to law, although the sale was not conducted with so vigilant an inquiry into the salable value of the interest as the court was entitled to expect from the assignee. That the petitioners establish no right to the interference of the court to cause a transfer of the property to them; but it appearing that there is color in the case for a more authoritative decision upon points of law of a gen-